IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK OSWALD, | ) | CASE NO.  5:19-CV-01191-JRA |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| NICHOLAS MAUER, SUMMIT COUNTY | ) | MAGISTRATE JUDGE |
| ADULT PROBATION OFFICER, *et al.*, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondents. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Frank Oswald ("Oswald" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Oswald currently is on community control with ten conditions. (Doc. No. 5-1, Ex. 15.)[1] For the following reasons, the undersigned recommends that the Petition be DENIED.

### I.     Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Oswald's conviction as follows:

> {¶ 2} One Saturday evening, Mr. Oswald and his cousin attended a wedding reception for a member of their family.

---

[1] Because Oswald filed his habeas petition during the pendency of his community control sanctions, "custody" is present to give this Court jurisdiction. *Kiriazis v. Polito,* No. 1:05cv2227, 2006 WL 1620217, at *1 (N. D. Ohio June 7, 2006).

> Mr. Oswald's cousin came with his girlfriend, the victim in this matter, and she socialized with Mr. Oswald as the evening progressed. When the reception ended, Mr. Oswald, the victim, and her boyfriend (Mr. Oswald's cousin) drove together to a nearby hotel where several family members had rented rooms for the evening. They then spent the next few hours visiting with other cousins, drinking, and occasionally smoking marijuana.
>
> {¶ 3} Eventually, all of the cousins returned to their own rooms, save for Mr. Oswald, who needed a place to sleep. The victim's boyfriend agreed that Mr. Oswald could stay in their room, but a fight between the victim and her boyfriend led to her and Mr. Oswald being alone together in the room. According to the victim, she and Mr. Oswald fell asleep in the hotel bed, fully dressed and with only their hands touching. She then awoke some time later to find him having vaginal intercourse with her. The victim immediately told Mr. Oswald to stop, and he complied. Several days later, she spoke with the police about the incident, and they arrested Mr. Oswald.
>
> {¶ 4} A grand jury indicted Mr. Oswald on one count of rape and two counts of sexual battery. The first sexual battery count alleged a violation of R.C. 2907.03(A)(2) while the second count alleged a violation of R.C. 2907.03(A)(3). Following a bench trial, the court found Mr. Oswald guilty of the latter sexual battery count and not guilty of his remaining counts. The court sentenced him to serve two years in prison and classified him as a tier III sexual offender.

*State v. Oswald*, 2018-Ohio-245, 2018 WL 542358, at *1 (Ohio Ct. App. Jan. 24, 2018).

## II.     Procedural History

**A.     Trial Court Proceedings**

On May 16, 2016, the Summit County Grand Jury indicted Oswald on the following charges: one count of rape, in violation of O.R.C. § 2907.02(A)(2); one count of sexual battery, in violation of O.R.C. § 2907.03(A)(2); and one count of sexual battery in violation of O.R.C. § 2907.03(A)(3). (Doc. No. 5-1, Ex. 1.) Oswald entered pleas of not guilty to all charges. (Doc. No. 5-1, Ex. 2.)

Oswald waived his right to a jury trial. (Doc. No. 5-1, Ex. 3.) Oswald's bench trial began on February 28, 2017 and concluded on March 1, 2017. (Doc. No. 5-1, Ex. 4.) The trial court judge found Oswald guilty of one count of sexual battery in violation of O.R.C. § 2907.03(A)(3), and not guilty of rape and the other sexual battery count. (*Id.*)

On April 13, 2017, the state trial court held a sentencing hearing. (Doc. No. 5-1, Ex. 5.) The state trial court sentenced Oswald to a prison term of twenty-four months and a mandatory period of five years of post-release control. (*Id.*) The trial court also ordered Oswald to register as a Tier III Sex Offender. (*Id.*)

**B.     Direct Appeal**

Oswald, through counsel, filed a timely notice of appeal to the Ninth District Court of Appeals. (Doc. No. 5-1, Ex. 6.) In his appellate brief, he raised the following assignments of error:

> I.      THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION UNDER R.C. § 2907.03(A)(3) IN VIOLATION OF OSWALD'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
>
> II.     OSWALD'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> III.    THE TRIAL COURT IMPROPERLY PERMITTED TESTIMONY REGARDING OSWALD'S ALLEGED STATEMENT TO DETECTIVE DONATO, THEREBY DEPRIVING HIM OF HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

(Doc. No. 5-1, Ex. 7.) The State filed a brief in response. (Doc. No. 5-1, Ex. 8.)

On January 24, 2018, the state appellate court affirmed Oswald's conviction. (Doc. No. 5-1, Ex. 9.) *See also Oswald*, 2018-Ohio-245, 2018 WL 542358, at *7.

On March 12, 2018, Oswald, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 5-1, Ex. 10.) In his Memorandum in Support of Jurisdiction, Oswald raised the following Propositions of Law:

> I.      R.C. § 2901.22(B) does not impose an affirmative duty on defendants to inquire as to the existence of a pertinent fact absent evidence that the defendant subjectively believed that there was a high probability that said fact actually existed.

3

> II  "Knowledge" is not established under R.C. § 2901.22(B) based upon evidence of the mere possibility that a pertinent fact or circumstances exist.
>
> III.  A conviction under R.C. § 2907.03(A)(3) cannot be sustained upon proof that the defendant had "constructive knowledge" of the accuser's mental condition at the time of the alleged offense.
>
> IV.  A conviction under R.C. § 2907.03(A)(3) requires proof, beyond a reasonable doubt, that at the time of the alleged offense, the defendant knew that the accuser was only submitting because he or she was unaware that the sexual conduct was occurring.

(Doc. No. 5-1, Ex. 11.) The State filed a waiver of memorandum in response. (Doc. No. 5-1, Ex. 12.)

On May 23, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (Doc. No. 5-1, Ex. 13.)

**C.  Judicial Release**

On October 18, 2017, while his direct appeal was pending, Oswald, through counsel, filed a motion for judicial release. (Doc. No. 5-1, Ex. 14.) The trial court held a hearing on the motion on December 21, 2017. (Doc. No. 5-1, Ex. 15.) On January 4, 2018, the trial court granted Oswald's motion for judicial release and placed Oswald on community control for two years. (*Id.*)

On February 6, 2018, Oswald filed a motion to modify community control sanctions to allow him access to a computer for employment purposes. (Doc. No. 5-1, Ex. 16.) On March 20, 2018, the trial court granted the motion to modify community control sanctions. (Doc. No. 5-1, Ex. 17.)

**D.  Federal Habeas Petition**

On May 23, 2019, Oswald, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The conviction is not supported by sufficient evidence in violation of Petitioner's constitutional right to due process of law under the United States Constitution[.]

4

>**Supporting Facts**:  See Memorandum of Law, which is attached hereto and incorporated herein by express reference.

(Doc. No. 1.)

On June 28, 2019, Respondents filed the Return of Writ.  (Doc. No. 5.)  Oswald did not file a Traverse.

### III. Review on the Merits

**A.**     **Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme

5

Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, ––– U.S. –––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence

6

in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

Oswald raises two arguments in support of his sole ground that his due process rights were violated when the state appellate court affirmed his conviction in the absence of sufficient evidence on each essential element of the offense. (Doc. No. 1-2 at 6-17.) First, Oswald argues there was no direct evidence of knowledge at the time the sexual conduct began that the victim only submitted to the conduct because she was asleep. (*Id.* at 10-13.) Second, Oswald asserts there was insufficient evidence to infer knowledge; he argues the state appellate court only relied on a "passing reference to Petitioner's use of the word 'maybe' in describing his belief that [the victim] was awake," a reference Oswald maintains was taken "entirely out of context," and which "does not support a finding that Petitioner acted despite being aware of a *high probability* that [the victim] was asleep or otherwise unconscious." (*Id.* at 13-17) (emphasis in original). Oswald maintains his statements "suggest that he was aware of the *possibility* that [the victim] was not awake." (*Id.* at 17.) Oswald asserts the trial court and the state appellate court "disregarded any evidence of [his] subjective belief" and found knowledge could be established "solely upon a determination that the accuser was, in fact, unaware that the conduct was occurring." (*Id.* at 18.)

Oswald argues that in so doing, the trial court and the state appellate court transformed the statute into a "strict liability offense." (*Id.*)

Respondents argue the *Jackson* standard "does not mean, as Oswald's habeas petition in principal part argues, that Oswald's trial testimony must be given credence." (Doc. No. 5 at 13.) Respondents assert Oswald fails both levels of review for sufficiency of the evidence, and as a result his insufficiency of the evidence claim is meritless under the AEDPA. (*Id.* at 14-16.)

The record reflects Oswald raised a sufficiency of the evidence claim on direct appeal to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 5-1, Ex. 7, 11.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 6} In his first assignment of error, Mr. Oswald argues that his sexual battery conviction is based on insufficient evidence. Specifically, he argues that there was no evidence he knew the victim was asleep when he began having vaginal intercourse with her. This Court disagrees.
>
> {¶ 7} Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).
>
>> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
>
> *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047–M, 2015–Ohio–3810, ¶ 7.
>
> {¶ 8} "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed." R.C. 2907.03(A)(3).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). Whoever commits the foregoing offense is guilty of sexual battery. R.C. 2907.03(B).

{¶ 9} The victim testified that she resided in Columbus when these events transpired, but drove north for the weekend to attend a wedding with her boyfriend, who was Mr. Oswald's cousin. The victim had met Mr. Oswald once or twice before at family gatherings and sat at a table with him during the reception. After the reception, the victim, her boyfriend, and Mr. Oswald drove together to a nearby hotel where several members of the boyfriend's family had reserved rooms for the evening. The victim testified that she had consumed alcohol during the wedding and, on the drive to the hotel, took an Adderall to help her stay awake longer. Additionally, she gave Mr. Oswald an Adderall.

{¶ 10} Once at the hotel, the victim changed into a t-shirt, sweatshirt, and a pair of leggings. She and her boyfriend had reserved their own room that evening, but joined his cousins in another room after changing clothes. Over the next few hours, the victim, her boyfriend, and his cousins continued to drink and went outside a few times to smoke marijuana. Eventually, the victim and her boyfriend returned to their room along with Mr. Oswald and another cousin. The cousin departed not long after, leaving Mr. Oswald with the couple. The victim testified that her boyfriend then agreed to let Mr. Oswald sleep on the floor in their room because he needed a place to stay. There was testimony that, at that point, it was about 4:00 a.m.

{¶ 11} Not long after Mr. Oswald lay down on the floor to sleep, the victim and her boyfriend began arguing. The victim indicated that their argument was more intense than usual because they were both intoxicated. The fight roused Mr. Oswald and also resulted in the boyfriend leaving the hotel without the victim. Greatly upset, the victim sobbed and talked to Mr. Oswald about her relationship with her boyfriend. She then went into the bathroom and took a Xanax before lying down in bed. The victim testified that she and Mr. Oswald ultimately fell asleep in the same bed, fully clothed, with only their hands touching.

{¶ 12} At some later point, the victim awoke and felt Mr. Oswald pressing against her from behind. Though she was confused, she quickly registered that her leggings and underwear had been pulled down and Mr. Oswald was having vaginal intercourse with her. She then said: "I didn't give you permission to do this." According to the victim, Mr. Oswald stopped slowly and acted "really

9

casual," as if he had not done anything wrong. She testified, however, that she never invited Mr. Oswald to have sex with her, never signaled that it was acceptable for him to do so, and never assisted him in pulling down her clothing.

{¶ 13} Although the victim made several attempts to contact her boyfriend, she was unsuccessful. She testified that she could not otherwise arrange a ride back to her car, so she had to accept a ride from Mr. Oswald. Once she got back to her car, she returned to Columbus without telling anyone what had happened. The victim described being confused, embarrassed, and unsure of what to do.

{¶ 14} Later that evening, the victim sent a text message to her boyfriend, indicating that she was extremely upset because she had "woke[n] up to [Mr. Oswald] having sex with [her]." Her boyfriend then called and, after they spoke, she agreed that he could report the incident to the police. Meanwhile, that same evening, the victim received a text message from Mr. Oswald, asking if she was doing alright. The victim did not initially respond to Mr. Oswald's message, but her boyfriend sent Mr. Oswald a text message, asking him, "How could you do that?" In response, Mr. Oswald indicated that he was "freaking out," described himself as having suicidal thoughts, and wrote: "Please tell her I am so sorry and tell her once I realized what I was doing I stopped[.]"

{¶ 15} Over the course of the next two days, the victim went to the hospital for an exam and returned to the Twinsburg area to meet with Detective Brian Donato. While speaking with the detective, the victim responded to Mr. Oswald's text message. The following text message exchange then took place:

> [THE VICTIM]: I mean I trusted you in the room with me [ ] and I woke up to you having sex with me. I didn't give you permission. Or even lead you on. You were comforting me and told me everything was going to be ok with me and [my boyfriend].
>
> [MR. OSWALD]: I know[.] And this is killing me[.] [I've] never done anything like this before and I am disgusted with what happened[.] Once you said that I realized what I was doing and * * * stopped[.]

When the victim wrote, "You hurt me by raping me in my sleep," Mr. Oswald responded by asking if he could call her. He also repeatedly apologized and wrote that it "was never [his] intention to hurt [her] * * *."

{¶ 16} Detective Donato and another officer met with Mr. Oswald at his home the day after the victim's interview. The detective surreptitiously recorded the meeting, and the State played portions of the recording at trial. Mr. Oswald informed the officers that he and the victim fell asleep together, but he then awoke, pulled her pants down, and "forced [himself] on her * * *." Mr. Oswald stated that the victim was making noises, so he thought "maybe" she was awake. When asked whether the victim had been "passed out when [he] started," however, Mr. Oswald responded, "yeah, * * * we were definitely both asleep." He

10

also acknowledged that, while he was having sex with the victim, she attempted to turn and said, "I didn't give you permission to do this."

{¶ 17} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that, at the time he had sex with the victim, Mr. Oswald knew she was submitting because she was unaware of what was happening. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus; R.C. 2907.03(A)(3). The victim specifically testified that she fell asleep next to Mr. Oswald fully clothed, but awoke to find her leggings and underwear pulled down and Mr. Oswald having sex with her. *See Summit v. Anderson*, 9th Dist. Summit No. 27886, 2016–Ohio–7275, ¶ 19. She testified that she never invited him to engage in intercourse with her or helped him pull down her clothing. Indeed, both she and Mr. Oswald agreed that, as he was having sex with her, she stated: "I didn't give you permission to do this."

{¶ 18} When text messaging with the victim, Mr. Oswald never attempted to deny forcing himself on her. In fact, when confronted with her message, "I woke up to you having sex with me * * *," Mr. Oswald responded: "I know[.] And this is killing me[.]" He also admitted to Detective Donato that he pulled down the victim's leggings, that she was "passed out" when he began, and that he "forced [himself]" on her. *See State v. Smetana*, 9th Dist. Lorain No. 12CA010252, 2013–Ohio–2376, ¶ 14. Although Mr. Oswald remarked at one point that he thought "maybe" the victim was awake, he made no attempt to verify that fact. A rational trier of fact, therefore, could have concluded that he believed there was a high probability that the victim was asleep or otherwise unconscious, but failed to inquire or acted "with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). As such, this Court rejects his argument that his sexual battery conviction is based on insufficient evidence. Mr. Oswald's first assignment of error is overruled.

*Oswald*, 2018-Ohio-245, 2018 WL 542358, at **1-4.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of

11

witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.) *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Oswald's conviction was supported by sufficient evidence. In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law. As noted in the state appellate court opinion, the victim testified she and Oswald fell asleep while she was fully clothed with only maybe their hands touching, but she later awoke to find her leggings and underwear pulled down and Oswald having sex with her. (Doc. No. 5-2 at PageID# 462, 464-66.) The victim further testified she never invited Oswald to have sex with her or helped pull down her clothing. (*Id.* at PageID# 508, 522.) Both the victim and Oswald stated that the victim said, "I didn't give you permission to do this." (Doc. No. 5-2 at PageID# 467; Doc No. 5-4 at PageID# 743.) Oswald admitted to detectives that he "forced himself" on the victim.[2] (Doc. No. 5-4 at PageID# 701.)

Furthermore, on cross-examination, Oswald admitted the following:

- He never told the police during his interview that the victim was pressing her butt against his penis. (Doc. No. 5-4 at PageID# 697-98.)

- He never told the police during his interview that the victim initiated sex with him. (*Id.* at PageID# 698.)

- He never told the police during his interview that he believed the victim was awake. (*Id.*)

- His interview with the police would have been the time to tell them that the sex was consensual. (*Id.* at PageID# 700.) He never told the police during his interview that the sex was consensual. (*Id.*)

- He used the word "forced" in his interview with the police to describe his behavior. (*Id.* at PageID# 701.)

- He told police he had never had "unconsensual sex with anyone before." (*Id.* at PageID# 702.)

---

[2] Contrary to Oswald's assertion (Doc. No. 1-2 at 12-13), the fact that the state trial court found that Oswald did not use the term "force" in a way sufficient to meet the statutory requirement for rape does not mean the trial court was foreclosed from considering Oswald's statement as evidence sufficient to support a conviction for sexual battery. (*See* Doc. No. 5-4 at PageID# 741.)

13

- He never disagreed with or corrected the victim's version of events in the text messages they exchanged after the fact. (*Id.* at PageID# 706-07.)

The state appellate court also found that Oswald acknowledged the victim "maybe" was asleep, he made no effort to confirm she was awake. *Oswald*, 2018-Ohio-245, 2018 WL 542358, at *3. While Oswald asserts the state trial court took his statement "entirely out of context" and "fail[ed] to mention the particular facts and circumstances – as testified to by Petitioner – that supported his belief that [the victim] was awake (*e.g.* [the victim] was pressing her body against him and making noises)" (Doc. No. 1-2 at 16-17), he fails to provide the context for the statement and overlooks the fact that the trial court was not required to credit Oswald's testimony. Based on the above and applying the "double deference" required under the AEDPA, the Court is unable to say the state appellate court's decision "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

The state appellate court reasonably concluded that sufficient evidence supported the trial court's findings as to each element of the charge at issue[3] based on the above testimony from both the victim and Oswald, as well as Oswald's statements to police. While Oswald asserts there was insufficient evidence based on his testimony setting forth his version of events, it is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651. While Oswald interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

The state appellate court reasonably rejected Oswald's argument there was insufficient evidence to support his conviction, and there is no basis for this Court to conclude that the state court decision in this case involved an unreasonable determination of the facts or was contrary to, or involved an unreasonable

---

[3] Under O.R.C. § 2907.03(A)(3), a person commits sexual battery when a person engages in sexual conduct with another, not the spouse of the offender, when the offender knows that the other person submits because the other person is unaware that the act is being committed.

application of, clearly established federal law. Accordingly, it is recommended the Court find Oswald's sole ground for relief lacks merit.

### IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: April 29, 2021                     *s/ Jonathan Greenberg*
                                          Jonathan D. Greenberg
                                          United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).